[Civ. No. 31923.   Second Dist., Div. One.   Dec. 28, 1967.]

CHARLES LANDIS et al., Plaintiffs and Respondents, v. CELESTE B. BLOMQUIST, Defendant and Appellant.

Jack Irwin Warner and Chester H. Zager for Defendant and Appellant.

Biram & Crandall, James R. Biram and Lynn D. Crandall for Plaintiffs and Respondents.

LILLIE, J.—Defendant, the buyer, appeals from a judgment decreeing specific performance of a contract for the sale of a 50-unit apartment building in the Panorama City area. She contends that there was no proof, nor any finding, to the effect that the remedy sought by plaintiffs was mutually available to her; it is also urged that the evidence was insufficient to support the finding that plaintiffs had performed certain conditions precedent to which they had agreed, and finally, that the form of the judgment is erroneous in that it failed to contain an alternative provision that the premises be sold and defendant ordered to pay any deficiency thereafter remaining.

The contract, an escrow agreement, was entered into at a branch of Bank of America on June 2, 1965. The total agreed price was $375,000, consisting of $100,000 cash payable through escrow, defendant's assumption of an existing trust deed on the property with an approximate balance of $222,000, and defendant's note in plaintiffs' favor for $53,000 (payable January 2, 1966) to be secured by property acceptable to plaintiffs outside of escrow—prior to closing escrow, however, plaintiffs were to advise the bank's escrow department in writing that such security had been received. Under the agreement the plaintiffs further undertook to furnish a pest control report showing the property to be free of infestation and to deposit in escrow a statement of monthly rentals and any security rents and a deed and bill of sale (with inventory attached) covering the personalty on the premises. On her part, defendant authorized the escrow holder

to use her funds, notes and instruments upon the taking of such steps as would warrant the issuance of a policy of insurance showing title vested in defendant subject to the deed of trust above mentioned; she also reserved the right to approve the inventory rental statement submitted by plaintiffs.

Defendant deposited the sum of $25,000 upon opening of the escrow. Although the agreement provided for her to do so on or before July 1, 1965, the balance of cash ($75,000) was not deposited by defendant, nor did she ever deposit with the bank the note in plaintiffs' favor as contracted for. She was guilty of these omissions notwithstanding a savings clause in the agreement which provided that upon inability of the bank to comply with the escrow instructions "on or prior to July 2, 1965," it would comply as soon thereafter as possible unless a written demand for return of money or instruments was received subsequent to such date and prior to the recording of any instrument contemplated by the escrow. Plaintiffs thereupon instituted the present action on August 9, 1965.

Specific performance of a contract cannot be enforced where there is no mutuality of remedy between the parties. The above doctrine has been thus codified: "Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance." (Civ. Code, § 3386.) As her first point, defendant contends that she could not have specifically enforced the subject agreement because plaintiffs thereunder reserved the right to approve the security offered by her for the $53,000 note; although such reservation was made, defendant continues, there was an absence of any evidence that plaintiffs either demanded, received or approved security for the note before the close of escrow or at any time prior to the commencement of the instant proceeding. For several reasons, the above claim is not sustainable. As noted earlier, defendant failed to deposit the executed note in escrow; having been guilty of such omission, she cannot rely on the provisions of the statute above quoted. Commenting on that section, in *Miller* v. *Dyer*, 20 Cal.2d 526, 530 [127 P.2d 901, 141 A.L.R. 1428], the court stated that the rule was never considered applicable where the unavailability of the remedy to the party against whom relief was sought resulted from his own lack of compliance with the terms of the contract. Thus, it is evident that if there is any want of mutuality of remedy

at bar, the same was brought about by defendant's own conduct in the premises. Nor is there merit to the further contention that the contract lacks mutuality of obligation because it gave the plaintiffs the discretionary power to determine the acceptability of the security if and when tendered by her; the result, according to defendant, would be the division of the agreement into independent covenants or to allow subsequent conditions to be unilaterally imposed for its enforcement. ▇ As will presently be pointed out, however, the doctrine under discussion has been qualified to such an extent that what equity now exacts as a condition of relief is the assurance that a decree of specific performance, if rendered, will operate without injustice to either party. Approval of the tendered security being akin to an option with conditions left for future ascertainment, each party could compel the other to accept the determination of a court of equity as to this limited phase of the transaction. (*Leider* v. *Evans,* 209 Cal.App.2d 696 [26 Cal.Rptr. 123].) ▇ " 'If the contract cannot be performed without settlement of the undetermined point, each party will be bound to agree to a reasonable determination of the unsettled point in order that the main promise may be enforced.' [Citation.]" (*Ontario Downs, Inc.* v. *Lauppe,* 192 Cal.App.2d 697, 703 [13 Cal.Rptr. 782].) ▇ Too, "where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." (*California Lettuce Growers* v. *Union Sugar Co.,* 45 Cal.2d 474, 484 [289 P.2d 785, 49 A.L.R.2d 496].)

▇ By instituting the instant action, plaintiffs placed themselves within the jurisdiction of the court so that performance of any conditions assertedly required of them by defendant could be assured; the requirement of mutuality was thus fulfilled. A recent pronouncement of our Supreme Court, restating the doctrine, supports this conclusion: "It has been held from an early date in this state that, where a party commences an action to compel specific enforcement of an agreement for the sale of real property, the requirement of mutuality is satisfied, the theory being that by bringing the action the plaintiff has submitted himself to the jurisdiction of equity and thereby enables the court to assure performance by him." (*Ellis* v. *Mihelis,* 60 Cal.2d 206, 216 [32 Cal.Rptr. 415, 384 P.2d 7].) Since the trial of the instant action took place more than six months after payment of the note became due (January 2, 1966), plaintiffs' approval of the security

for that instrument was no longer required and, therefore, not compellable specifically; as to the issues properly belonging in this last category, the court ordered the execution and delivery by plaintiffs to defendant of the instruments necessary to convey title to the realty and personalty contemplated by the parties' agreement.

Finally, although the court's determination thus assured the performance by plaintiffs of their obligations under the contract, the complaint is made that no finding as to mutuality was made and, since the issue was a material one, the omission is reversible error. But it appears that the findings were actually prepared by defendant's attorneys; therefore, error, if any, was invited and waived. (*Burke* v. *Bloom*, 187 Cal.App.2d 155 [9 Cal.Rptr. 563].) Furthermore, it is doubtful if there is any requirement in law that a doctrine, such as mutuality of remedy, should be made a part of the formal findings which, in this case, dispose of all the ultimate facts.

Defendant's next assignment of error challenges the sufficiency of the evidence to support the finding that plaintiffs duly performed all conditions precedent on their part to be performed and were ready and able to complete the subject transaction. Observing that the issue is one involving the performance of an escrow agreement, she invokes the rule that in such circumstances the doctrine of substantial performance does not apply. (*Altadena Escrow Corp.* v. *Beebe*, 181 Cal. App.2d 743 [5 Cal.Rptr. 530].) While the case just cited properly points out that the terms and conditions of an escrow agreement must be strictly performed, it does not hold that the rule on appeal is any different from that normally controlling, namely, the existence of substantial evidence to support the finding criticized. Thus, the opinion states at its outset that "Essentially this is a fact case." (P. 744.) Our powers being thus delimited, we hold that the evidence sustains the findings covering the several matters which follow.

Defendant complains that plaintiffs failed to show that either the inventory of furnishings or the rental statement was ever approved by her. It appears, however, that plaintiffs were only required under the contract to deposit the above instruments with the escrow holder, and there was uncontradicted testimony by an escrow officer that they so complied. The witness also stated that while she never received defendant's approval thereof after the material had been mailed to her, the witness never was notified by defend-

ant to the contrary. Perhaps this resulted from defendant's feelings several days after the escrow instructions were signed; according to her business adviser, who decided "it wasn't a very good deal for her," defendant told him: "Well, get me out of it, please."

The next phase of the controversy relates to the termite report, defendant asserting that plaintiffs failed to prove that the property was free of termite infestation. Two reports concerning the property's condition were deposited with the bank, the escrow officer so testifying. One of the above reports was filed after the escrow was scheduled to close; but time was not of the essence, and it was so furnished in response to a letter from defendant's attorney. As in the instance of the inventory and rental statement, it is also contended that defendant never approved of the two reports; again, however, no such approval was contracted for. We also note, relative to this issue of termite infestation, that the word "report" not "clearance" is found in the escrow instructions; if the latter term had been used, there would be some substance to defendant's present point. See *Anderson* v. *Southern Title & Trust Co.*, 81 Cal.App.2d 700, 702 [184 P.2d 949].

It is argued that plaintiffs failed to produce evidence that they could deliver a policy of title insurance. Contrary to such contention, plaintiffs did not so contract; rather, they undertook to supply the escrow holder with instruments which would enable it to procure the subject policy. This, it appears, was done. A deed to the property was deposited in escrow; a preliminary title report was procured showing the state of the property's title; and this latter report shows that the bank was in a position to obtain the policy of title insurance upon plaintiffs' deposit of the deed and other instruments called for by the instructions. It should further be pointed out that the obligation to do the things above mentioned were conditions concurrent, not precedent, as defendant has urged. Under a contract of this kind, the deposit of money by the buyer and the deposit of instruments by the seller were mutually dependent, each promise being given in consideration for the other. Where such concurrent performance is called for, neither party can place the other in default unless he is fully able to perform or make a tender of the promised performance. (*Groobman* v. *Kirk*, 159 Cal.App.2d 117, 125 [323 P.2d 867].) Accordingly, defendant can raise no objection as to nonperformance since she herself (as noted earlier) has yet to carry out her end of the bargain.

The same conclusion must be reached with respect to the next point that plaintiffs failed to approve security for the note to be executed by defendant. Reference has heretofore been made to defendant's default in that regard. If defendant's act in signing the note be deemed a condition precedent, she has not done so; if it be regarded as a condition concurrent, she has yet to perform.

Defendant's concluding assignment criticizes the form of judgment which, it is urged, should have been in the alternative; under such alternative the property would be ordered sold and defendant made liable for any deficiency after sale. The authorities cited by defendant do not hold that the form of decree requested by defendant must be entered in all cases; too, it appears that a judgment in such form could possibly lead to problems which, it has been noted, should be avoided. (See Hetland, Remedial Aspects of Installment Sales in California, California Land Security and Development, Ch. 2 [Cont.Ed. Bar].) On the other hand the form of judgment adopted here follows that approved in *Goldsworthy* v. *Dobbins,* 110 Cal.App.2d 802 [243 P.2d 883]. It ordered defendant to pay plaintiffs $152,816.15 plus interest and, upon such payment, directed plaintiffs to convey the property with certain adjustments. We find no prejudice done to defendant by the *Goldsworthy* approach to the problem which, incidentally, is more consistent with recent authorities.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied January 19, 1968, and appellant's petition for a hearing by the Supreme Court was denied February 21, 1968.